## The inhabitants of the town of WESTON *against* The inhabitants of the town of READING.

To acquire a settlement, by the possession of real estate, an actual occupation is necessary.

Therefore, where *A.* residing in the town of *N.*, received a deed in fee of land, in the town of *R.*, of the value of more than 100 dollars; after which *B.* was appointed his overseer, and, while he held that trust, took from *A.* a deed in fee of the same land; then *B.*, claiming title under such deed, let the land, in his own right, to *C.*, for the ensuing season; *C.* entered and occupied, claiming to be in, as tenant to *B.*; and about the same time, *A.* was removed, by *B.*, into *R.*, and placed on, and restricted to, a part of the land, which was of less value than 100 dollars; it was held, that although the deed from *A.* to *B.* was void, yet the entry of *C.*, under *B.*, in the manner specified, was a disseisin of *A.*, and he had no possession, by virtue of which he could acquire a settlement in *R.*

*Fairfield,*
*June,*
*1824.*

Weston
*v.*
Reading.

This was an action of *assumpsit,* to recover the sum of 70 dollars, expended, by the plaintiffs, for the support of *William Wells,* his wife and children, alleged to be inhabitants of the town of *Reading.*

The cause was tried at *Fairfield,* at an adjourned term, in *April,* 1823, before *Bristol,* J.

On the 6th of *February,* 1808, *Rowland Downs,* who derived title from an alien, executed to *Wells,* then residing in *Newtown,* a deed in fee of about eighty acres of land lying in *Reading,* of greater value than 100 dollars. On the 14th of March, 1808, the select-men of *Newtown* appointed *Isaac Peck* an oversser to *Wells,* who remained his overseer during the residue of the year 1808. On the 21st of *March,* 1808, *Wells* executed a deed of said land in fee to *Peck.*

The defendants adduced evidence to prove, that immediately after the execution of this deed, *Peck,* claiming the land as his property, by virtue thereof, agreed, by parol, with *Seth Wheeler,* to let it to him, for the ensuing season, for a share of the crops to be raised thereon; and that *Wheeler,* accordingly, entered on the land, as tenant to *Peck,* and cultivated it through the season, delivering to *Peck* the stipulated proportion of the crops; that *Wells* was removed into *Reading,* by the direction of *Peck,* and placed on a part of said land, of less value than 100 dollars, in a house standing thereon, with orders not to interfere with *Wheeler,* or to go on the other part of the land, during the time of his occupancy; *Peck* agreeing to pay *Wheeler* all damages, which *Wells* should do on the premises. The defendants, therefore, contended, that these facts being established, *Wells* had no such possession of the land as was requisite to make him an inhabitant of *Reading.* The reverse of this was claimed by the plaintiffs.

The judge instructed the jury, that the question for their determination was, whether *Wells* was *possessed* of real estate in fee, of the value of 100 dollars, while he resided in *Reading;* that the deed from *Wells* to *Peck,* his overseer, was void, and transferred neither title nor possession; that though this deed was void, it might, nevertheless, be material in determining whether *Wheeler's* possession was, in reality, the possession of *Wells,* or the possession of *Peck;* that if the land was let on shares by *Wells* to *Wheeler,* with the consent of the overseer, *Wells* was still in possession of the freehold, notwithstanding the occupation of *Wheeler,* and his cultivation on shares; but that, although the deed from *Wells* to *Peck* was void, still if *Peck* let

the land to *Wheeler*, in his own right, claiming title to the land under such deed, and *Wheeler* went in under *Peck*, claiming to be in, as tenant to *Peck*, this would amount to a disseisin of *Wells*, and unless possession of the premises, to the value of 100 dollars, was restored to *Wells*, during the time he lived in *Reading*, he did not gain a settlement in *Reading ;* and that *Wells's* being in, in the manner, and to the extent, claimed by the defendants, was not a sufficient restoration of the possession to enable the plaintiffs to recover.

The jury returned a verdict for the defendants; and the plaintiffs moved for a new trial, on the ground of a mis-direction.

*Daggett*, in support of the motion.

*N. Smith* and *Sherman*, contra.

HOSMER, Ch. J. It is unnecessary to discuss the title of *Wells*, in order to ascertain its validity. Admitting it to be unquestionable, it is a legal pre-requisite to his having become an inhabitant of *Reading*, that he should have been *possessed* in fee of a real estate in that town, during his continuance therein. *Stat. p.* 391. ed 1808. By this expression, something more is intended, than that *Wells* should have the constructive possession of land in *Reading*. This he would have had, if to the land in question he had title, and no person was in the occupation of it, although he had never passed the bounds of *Newtown*. The possession mentioned in the statute, means the actual occupation of the land; and hence it becomes the sole enquiry, whether in this manner *Wells* ever was possessed.

Two propositions I consider to be incontrovertibly clear; that is, that *Peck*, by his tenant *Wheeler*, had the possession of the land in question; and that *Wells* never had the actual possession. Under claim of title, by virtue of the deed from *Wells*, *Peck*, while he was his overseer, took possession of the land, and leased it to *Wheeler*. Undoubtedly, if the title was in *Wells*, *Peck* was a disseisor. Disseisin is a wrongful putting out of him that is seised of the freehold. *Co. Litt.* 277. *a.* 3 *Black. Comm.* 169. And what can be higher evidence of an ouster, than taking the actual possession of land, under claim or colour of title? If *Peck* had been the guardian of *Wells*, or tenant in common with him, and had entered on the premises, with the intention of asserting a title in himself, he

*Fairfield,*
*June,*
*1824.*

Weston
*v.*
Reading.

would have been a disseisor; and the fact of his intention might be ascertained from his express declarations, or from circumstances leading to the inference, or from his subsequent acts. *Jackson* d. *Youngs* & al. v. *Vredenberg*, 1 *Johns. Rep.* 159. *Smith* d. *Teller* & al. v. *Burtis & Woodward*, 9 *Johns. Rep.* 174. *Co. Litt.* 374. *a.* But as overseer, *Peck* had no right to enter on the land; and his unwarrantably taking the possession, under claim and colour of title, is the most irrefragable evidence of a disseisin. The fact of his being overseer, in the case, makes no difference; for this neither incapacitated him from the assertion of his individual rights, nor disqualified him from the perpetration of wrong.

That *Wells* never actually possessed the land, is apparent from the preceding facts, as well as from the insufficient ground, by which it is attempted to be established. He never entered on the land, that was in the actual possession of *Wheeler*, nor even into the house standing on a part of it, asserting any claim beyond his actual occupation. This is conclusive on the point in question. Of the house *Wells* took the possession, with the understanding that he was not to interfere with the actual possession of *Wheeler;* and he did not interfere, either by an actual entry, or even by the advancement of a claim of right. He voluntarily relinquished the possession, and not improbably believed, that the title to the land was vested in *Peck.* If the entry be special, said Lord *Coke* (1 *Inst.* 15. *b.*) "*viz.* that he enter only into that parcel, and into no more, *there it reduceth that parcel only, into actual possession."*

The charge to the jury, in my opinion, was precisely correct; and no new trial ought to be granted.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.